Joseph **FERRELL**, Petitioner-Appellee,

v.

W. J. **ESTELLE**, Jr., Director, Texas Department of Corrections, Respondent-Appellant.

No. 77–1224.

United States Court of Appeals, Fifth Circuit.

March 2, 1978.

Opinion Withdrawn May 9, 1978.

John L. Hill, Atty. Gen., Austin, Tex., Alvin K. James, Asst. Atty. Gen. Houston, Tex., David M. Kendall, Jr., 1st Asst. Atty. Gen., Joe B. Dibrell, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

John Ackerman, N.C.C.D.L.P.D., Houston, Tex. (Court-appointed), for petitioner-appellee.

Before GOLDBERG, CLARK, and INGRAHAM, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Ferrell became deaf between the time of the murder with which he was charged and the time of his trial. In the brief period from the onset of his deafness to his trial he did not learn to read lips or to understand sign language. He could communicate only through written notes. Thus he could understand the proceedings at his trial only if someone wrote an explanation. His counsel asked the court to provide stenographers who could simultaneously transcribe the words spoken during the trial. The judge denied that motion, but he told the attorney that unlimited requests for recess would be granted to confer with Ferrell. Ferrell was convicted of murder with malice. Both on direct appeal and through state habeas corpus proceedings, Ferrell unsuccessfully challenged the judge's failure to provide him with simultaneous transcriptions. His petition for habeas corpus in federal district court, however, was granted. The state has appealed from that order. We affirm.

The murder with which Ferrell was charged occurred during a robbery of a

grocery store in February 1970. During the course of the robbery, the robbers, two men and a woman, moved the store's employees and customers about the store. As a result, the layout of the store and the positions of witnesses were critical to what was seen or heard and to a proper defense. Ferrell was indicted in March. In April, Ferrell was wounded during a "shoot out" with police who had gone to his home to investigate a separate theft. That wound was the cause of Ferrell's deafness.

Before Ferrell's trial in January 1971 his attorney petitioned the court to appoint stenographers. Although the judge denied that petition, he assured Ferrell's counsel that he would "be most lenient" and would give "ample opportunity" for Ferrell and his counsel to confer. During an extensive voir dire, Ferrell's counsel asked each prospective juror if frequent recesses to consult with Ferrell would prejudice the juror against Ferrell. Each juror responded that he would not be prejudiced. On several occasions his counsel wrote a note to explain to Ferrell why he had challenged or accepted a juror.

At Ferrell's trial eight people testified; seven of them had been inside the store during the robbery, one had been outside in his car. Five of the eight witnesses could not describe any of the robbers. Two men, both of whom had been inside the store, testified that Ferrell looked like one of the robbers. Both men said that the gun from which the fatal shot came resembled the one that had been taken from Ferrell after the "shoot out" in April. On cross-examination, however, each admitted that he was not positive of his identification of Ferrell. On direct examination, the eighth witness positively identified Ferrell as one of the robbers and as the one who shot the store owner, Samuel Toy.[1] He also said that

Ferrell's gun looked like the one that had been used to shoot Toy. In addition to the people who had been present during the robbery, a firearms expert testified. He explained that he had fired bullets from Ferrell's pistol and had been unable to establish conclusively that it was the same gun that had fired the shot that killed Toy.

In spite of the jurors' responses during voir dire and the judge's announcement that he would grant frequent recesses, Ferrell's counsel asked only twice for a recess to confer with his client. Both requests were granted. One recess occurred during the testimony of a pathologist who had performed the autopsy on Toy. The other recess came during the cross-examination of the one witness who positively identified Ferrell.

Ferrell appealed to the Court of Criminal Appeals, which affirmed his conviction. *Ferrell v. Texas,* 479 S.W.2d 916 (Tex.Cr. App.1972). In his brief to that Court, Ferrell's attorney argued that the trial court had erred when it failed to appoint an interpreter as required by § 38.31 of the Texas Code of Criminal Procedure (Vernon 1966). That section provides that "[i]n all criminal prosecutions, where the accused is deaf or a deaf-mute, he shall have the proceedings of the trial interpreted to him in a language that he can understand by a qualified interpreter appointed by the court." In his argument in the brief, Ferrell's counsel also alluded to a violation of the Sixth Amendment to the United States Constitution and a violation of article 1, § 10 of the Texas Constitution.[2] In affirming the conviction, the Court said that Ferrell's situation could be distinguished from cases involving deaf mutes "where virtually instant transcription may be provided through hand signals or an interpreter, as the case may be." 479 S.W.2d at 917.

---

1. On cross-examination this certainty was at least expressed ambiguously if it was not retracted.

2. The relevant portions of Article 1, § 10, provide:

> In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury . . . . He . . . . shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him . . . .

Ferrell next filed a pro se petition for habeas corpus in the state courts. That petition was denied without written opinion.

Ferrell then filed a pro se petition for habeas corpus in federal district court. After an evidentiary hearing, at which Ferrell was represented by court-appointed counsel, the district judge granted the petition and ordered the state to release Ferrell or to retry him within thirty days. In his findings of fact and conclusions of law, the district judge stated that Ferrell had been denied both his right to confront the witnesses against him and the right to aid in his own trial. He also found that Ferrell was represented as best his counsel could without having simultaneous transcription of the proceedings. In addition, he found "that it would be too much of a burden on the defendant's attorney in a trial of this sort to interrupt the trial constantly for delays in time in which to communicate adequately with the defendant on trial." He concluded that in a new trial it would be "incumbent upon the state to furnish the defendant whatever means are reasonable but adequate to keep him informed during the trial as to what's happening so he can protect his right to aid in his own defense."

We agree with the district judge that both the right to confront witnesses and the right to assist in one's own defense are involved in this case. But no previous case has presented the same issue as this case: What procedures must a state adopt to provide confrontation of witnesses and communication with counsel for a defendant whose mental competence to stand trial is not doubted but whose deafness began so close to the trial that he could communicate only through writing?[3] Analogies to trials involving defendants who are unable to speak

English are useful. *See, e. g., United States ex rel. Negron v. New York,* 434 F.2d 386 (2d Cir. 1970). But those precedents cannot control this case because their problem may be remedied by providing an interpreter for translation without simultaneously disrupting the progress of the trial. Instead, decision of this case must depend upon the constitutional principles that support those cases.

 The constitutional guarantee of due process in a criminal trial "is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). That guarantee encompasses both the right of a defendant to confront witnesses against him and his right to assist in his own defense. *See* U. S. Constitution, amendment VI; *Chambers v. Mississippi,* 410 U.S. at 295, 93 S.Ct. at 1046; *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Constitution does not, however, guarantee every defendant a perfect trial. The rights vouchsafed are practical, reasonable rights rather than ideal concepts of communication, and even these pragmatic rights may not be exercised without limit. The Constitution does not require that every defendant comprehend the English language with the precision of a Rhodes Scholar or appreciate the nuances of a witness' expressions or behavior with the skill of a doctor of psychology. Nor may a defendant press the exercise of his right to the point at which he disrupts the public's right to an orderly trial. *See Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). But such extremes need not be reached here. Rather, this appeal may be resolved through a more

---

**3.** On the form used by prisoners to apply for federal habeas corpus, Ferrell listed "incompetent to stand trial" as one of the grounds to support his allegation that he was being unlawfully held. In the summary of the case attached to that form, Ferrell plainly states that his incompetence was the result of his loss of hearing and not the result of a mental defect.

Thus we are not presented with a case like that which has perplexed the Illinois courts in which a person who cannot communicate may also be incompetent to stand trial. *See Illinois v. Lang,* 37 Ill.2d 75, 224 N.E.2d 838 (1967); *Illinois ex rel. Myers v. Briggs,* 46 Ill.2d 281, 263 N.E.2d 109 (1970); *Illinois v. Lang,* 26 Ill.App.3d 648, 325 N.E.2d 305 (1975).

basic balancing of Ferrell's rights under the Sixth Amendment against the public's interest in the administration of criminal law.

In a case involving a defendant who did not understand English, the Supreme Court of Arizona aptly stated the problem in this way:

> A defendant's inability to spontaneously understand testimony being given would undoubtedly limit his attorney's effectiveness, especially on cross-examination. It would be as though a defendant were forced to observe the proceedings from a soundproof booth or seated out of hearing at the rear of the courtroom, being able to observe but not comprehend the criminal processes whereby the state had put his freedom in jeopardy. Such a trial comes close to being an invective against an insensible object, possibly infringing upon the accused's basic "right to be present in the courtroom at every stage of his trial".

*Arizona v. Natividad,* 111 Ariz. 191, 526 P.2d 730, 733 (1974) (en banc). *See also Terry v. Alabama,* 21 Ala.App. 100, 105 So. 386 (1925).

The state of Texas recognizes that a defendant must be able to understand the proceedings against him. In section 38.31 of the Code of Criminal Procedure, the legislature has acted to provide a defendant with that understanding in the more usual case of a deaf defendant who has acquired a substitute language skill. In addition, the Texas courts have recognized a distinct constitutional basis for ensuring the defendant's understanding. The defendant in *Garcia v. Texas,* 151 Tex.Cr.R. 593, 210 S.W.2d 574 (1948), did not understand English. After a trial at which no interpreter was provided, he was sentenced to death for murder. The Court of Criminal Appeals concluded that the trial court had abused its discretion in failing to appoint an interpreter for the defendant. The Court explained that a defendant could not exercise his

right of cross-examination unless he "was in some manner, either through his counsel or an interpreter, afforded knowledge of the testimony of the witness." *Id.* at 580. Because Garcia had not been provided with an interpreter, the court concluded that his constitutional rights had been denied. In a more recent case, the Court of Criminal Appeals reached a similar decision in holding that a defendant who could not understand English had been denied his constitutional rights because he had not been provided with an interpreter throughout the proceedings. *Ex parte Nanes,* 558 S.W.2d 893 (Tex.Cr.App.1977). *See also United States v. Rodriguez,* 424 F.2d 205 (4th Cir.), *cert. denied,* 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970) (use of interpreter within sound discretion of trial court); *Suarez v. United States,* 309 F.2d 709 (5th Cir. 1962) (same).

The Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. Ensuring that the defendant has that minimum understanding is primarily the task of the trial judge. We agree with the state trial judge that to require stenographers who would provide simultaneous transcription would be a poor way to guarantee Ferrell's Sixth Amendment rights. These transcriptions could provide Ferrell with an understandable version of the questions and answers he had seen recited.[4] The problem is whether the constant pauses for instant replays of every question and every answer would destroy the continuity necessary for the state to present a coherent case and for the defendant to make an effective defense. Ferrell might gain the comprehension necessary for confrontation at great expense to overall understandability of the proceedings by jury, court, and parties alike. Resort to stenographers should be considered the least attractive device for ensuring Ferrell's rights.

---

4. In *Stevens v. Page,* 420 F.2d 933 (10th Cir. 1969), the court held that written communication was adequate to protect a deaf defendant's rights at a hearing on his guilty plea.

■ This does not mean that the trial court acted correctly in putting Ferrell to trial as and when it did. It erred in not exploring alternative means for providing Ferrell with an understanding of the proceedings. When Ferrell's attorney presented only the transcript alternative and then failed to take full advantage of the court's willingness to grant frequent recesses, he left in doubt whether he failed in his duty to court and client. Because other alternatives were not explored and because counsel failed to make the most of the choice offered by the court, Ferrell's rights were reduced below the constitutional minimum. In the context of the factual setting and the proof in this record, we cannot say that this deficit was harmless beyond a reasonable doubt. Thus a new trial is required.

Upon the return of this case to the state court, if Ferrell is still deaf, it should determine whether Ferrell has learned sign language or any other means of communication in the seven years that he has now been deaf.[5] If he has learned to communicate, then the state may retry him using an interpreter who is proficient in his means of communication. If Ferrell still has not learned sign language, the court should determine whether it would be feasible to require him to be trained in its use. If so, Ferrell could be retried in accord with § 38.31, after allowing a reasonable time for him to learn sign language. If Ferrell is able to learn only a part of sign language within the time considered reasonable, the trial could be held using such sign language as he can acquire, supplemented by written communication, with the participants agreeing in advance upon a signal from Ferrell that would indicate his need to supplement the sign language translation. Since Ferrell may have a disincentive to learn sign language, knowing that as soon as he learned he would be retried, we reiterate that we have no doubt that the state may retry him. He is competent to stand trial. If he does not learn to communicate in any way other than writing, then the state may guarantee his rights in a new trial by providing him with stenographers,[6] or with any device that will display or convey words to him and allow him to understand what the witnesses say and to assist his attorney in the conduct of his defense.

The district court correctly granted Ferrell's petition for habeas corpus relief. However, because the pursuit of alternatives discussed here could require more than the 30 days allowed for retrial by the district court, we direct that court to enlarge the limit on retrial. The precise length of such enlargement should be fixed by the district court based on reasonable projections supplied to it by the parties.

The order appealed from is accordingly modified and, as modified, is affirmed.

MODIFIED and AFFIRMED.

---

5. Many different communication systems are presently in use, and often more than one system is employed. True finger spelling, also known as the Rochester System, involves the spelling of individual words and is considered closest to spoken English. At the opposite end of the scale is American Sign Language, which utilizes virtually no finger spelling, eliminates function words such as articles and prepositions, and emphasizes symbols. In between are several linguistically based sign systems, all somewhat similar, which combine to some extent finger spelling and symbols. Moreover, speech reading is still used in the absence of "signing."

6. In *Ralph v. Georgia*, 124 Ga. 81, 52 S.E. 298 (1905), the Supreme Court of Georgia commented that such a procedure would be too cumbersome. We reject this dictum. If other alternatives prove ineffectual, it is available.