Alton Curtis ADAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–87–00226–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 28, 1988.

Fredia Lewis, Houston, for appellant.

John B. Holmes, Dist. Atty., Linda West, Asst. Dist. Atty., for appellee.

Before COHEN, JACK SMITH and SAM BASS, JJ.

## OPINION

COHEN, Justice.

In a non-jury trial, appellant was found guilty of sexual assault, and after finding the enhancement paragraph true, the court assessed 25 years confinement as punishment.

This case presents the problem of dealing with a deaf defendant who does not know sign language or lip reading. Appellant, who is deaf, claims that the trial court erred in failing to appoint an interpreter for him. He argues that this violated Tex. Code Crim.P.Ann. art. 38.31 (Vernon Supp. 1988) and denied him his right to confront and cross-examine witnesses, pursuant to the U.S. Const. amends. VI and XIV, and Tex. Const. art. I, sec. 10.

At the pre-trial motion hearing, the following transpired:

Mr. Clark [defense attorney]: I would like to bring the Court's attention to the prior approved order signed by Judge Bacon in this cause, case about the hearing of the defendant. My defendant is hearing impaired. At the examining trial we attempted to use an interpreter in sign language for him. He does not sign. He has a limited ability to read lips. This is going to cause a problem during the trial since he will not be able to understand or know what is going on. The interpreter that tried to sign at the examining trial was ineffective in communicating with him. He does not know sign language and he is deaf and it creates quite a problem for us. Might I suggest to the Court, the only solution I know of is to write every question out and answer. I've never been in this situation before, your Honor.

The Court: The only thing I can respond to that is that the trial court will take the necessary measures to protect her client to see that he is familiar with what is occurring, under the laws of this State.

The order referred to during this exchange consists of the word "granted" signed by the trial judge at the bottom of a pre-trial "Motion for Interpreter for Deaf Defendant." It stated:

[D]efendant moves ... the Court to appoint an interpreter for the deaf to translate for defendant at all hearings in this case ... Defendant has been hearing impared [sic] (deaf) since childhood. He is unable to hear. He does have some ability to read lips. He needs someone to interpret in sign language so that he may understand the proceedings. This request is made under ... Tex.Code Crim. Proc. art. 38.31.

The following exchange occurred shortly before trial:

The Court: Mr. Clark, I understand your client if [sic] deaf and cannot speak.

Mr. Clark: No, that is not correct. He speaks very well, he just cannot hear. And he reads. Everything that transpires that I think he needs to hear, I'll write him a note. I'm in the process of explaining to him that we're waiving the right to a jury trial.

The Court: For the purpose of the record, there's no reason to have a sign language translator because he doesn't understand sign language.

Mr. Clark: Correct. He can read lips just a little bit but not very much. He'll recognize you when you're speaking to him.

The record reflects that during appellant's direct examination, handwritten questions were given to appellant by his attorney and then answered orally by appellant. The record reflects only two other times when appellant's counsel gave him written explanations of what was happening. The first was counsel's explanation that appellant was waiving a jury. The second came after the complainant's testimony, when defense counsel stated that he would read a written summary of her testimony to appellant.

When the prosecutor commenced oral cross-examination of appellant, appellant could not understand her. The prosecutor stated, "Judge, I've written some questions to make it easier. I'm now going to explain that after we finish with question one we'll go to question two and then to question three."

Article 38.31 provides:

(a) If the court is notified by a party that the defendant is deaf and will be present at an arraignment, hearing, examining trial, or trial, ... the court shall appoint a qualified interpreter to interpret the proceedings *in any language that the deaf person can understand,* including but not limited to sign language.... (b) Following the filing of an indictment, information, or complaint against a deaf defendant, the court on the motion of the defendant shall appoint a qualified interpreter to interpret in a language that the defendant can understand, including but not limited to sign language, communications concerning the case between the defendant and defense counsel ... (c) ... (d) A proceeding for which an interpreter is required to be appointed under this Article may not commence until the appointed interpreter is in a position not exceeding ten feet from and in full view of the deaf person. (Emphasis added).

The article defines "deaf person" as "a person who has a hearing impairment, regardless of whether the person also has a speech impairment, that inhibits the person's comprehension of the proceedings or communication with others."

The leading case on this subject is *Baltierra v. State,* 586 S.W.2d 553 (Tex.Crim. App.1979). In *Baltierra,* the judgment was reversed for "unassigned fundamental error," even though the non-English speaking defendant did not request an interpreter at trial and did not present a point of error on appeal complaining of the interpreter's absence. 586 S.W.2d at 554. The court wrote:

> [W]e hold that when it is made known to the trial court that an accused does not speak and understand the English language an interpreter must be furnished to translate to the accused the trial proceedings, including particularly testimony of the witnesses presented by the State. In the absence of the opportunity to be aware of the proceedings and the testimony of the witnesses against her, appellant was denied the constitutional right of confrontation and, that right not being knowingly and intelligently waived, her trial and conviction are null and void.

586 S.W.2d at 559.

The court noted the similarity between a non-English speaking defendant and a deaf defendant:

> Close on the heels of *Garcia*[1] came *Field v. State,*[2] ... and *Williams v. State*[3] ... the former a deaf-mute and the latter totally deaf. The claim of each that right of confrontation had been denied because testimony was not communicated through an interpreter or otherwise was rejected for different reasons. Both decisions, however, were effectively overturned by the 1961 legislative mandate of what is now Article 38.31, V.A.C. C.P., that trial proceedings be interpreted to an accused who is deaf or a deaf-mute.

586 S.W.2d at 557.

The court found that no inquiry into harm was necessary in cases where the right to confrontation has been denied. It quoted with approval from *Bell v. State,* 32 Tex.Crim. 436, 24 S.W. 418 (1893), where the complaint was that the defendant was absent from the courtroom during the State's direct examination of one witness, whose testimony was withdrawn from the jury's consideration.

> There is but one safe guide in such matters, and that is a strict obedience to and conformity with the statutes and constitution. It is not always requisite to inquire whether harm has been done, or injury inflicted, by a violation of the provisions of law in this regard. The mere fact the peremptory demands of the con-

1. *Garcia v. State,* 151 Tex.Crim. 593, 210 S.W.2d 574 (1948) (non-English speaking defendant).

2. *Field v. State,* 155 Tex.Crim. 137, 232 S.W.2d 717 (1950) (deaf-mute defendant held to have waived right to alternate communication by failing to request it).

3. *Williams v. State,* 155 Tex.Crim. 594, 238 S.W.2d 534 (1951). (Death penalty for deaf defendant unanimously affirmed where defendant did not request any form of alternate communication, and trial court found that defendant could hear).

stitution and statutes have been violated is sufficient injury. The withdrawal of the evidence did not reach the error occurring in this case.

*Baltierra v. State,* 586 S.W.2d at 556–57 n. 6.

The court recognized that:

constitutional and statutory guarantees of confrontation include, in a proper case, that the trial proceedings and testimony be interpreted to the accused in a language he can understand by a qualified interpreter.

8. Thus *it is the duty of the Court to take whatever steps are necessary* to prevent injustice *and, if necessary, the Court should, on its own motion, appoint an interpreter* for the defendant at the State's expense.

*Baltierra v. State,* 586 S.W.2d at 558 n. 8 (emphasis added).

In granting habeas corpus relief to a deaf Texas prisoner, the United States Court of Appeals for the Fifth Circuit recognized the trial judge's responsibility:

The Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. *Ensuring that the defendant has that minimum understanding is primarily the task of the trial judge.*

*Ferrell v. Estelle,* 568 F.2d 1128, 1132 (5th Cir.1978) (emphasis added).

Finally, the court in *Baltierra* stated that appointing a Spanish speaking defense counsel to communicate with the Spanish speaking defendant would not be adequate. Recognizing that ability to communicate was "a basic aspect of effective assistance of counsel," the court nevertheless held:

[E]ffectuating that important constitutional requirement should not be taken as implementing the constitutional right of confrontation. While there is a suggestion ... that a lawyer speaking the same language can interpret testimony for an accused, we believe that added task, with its obvious distracting implications, should not be imposed on counsel. The lawyer discharges his obligation by providing effective assistance guaran-

teed by the Sixth Amendment to the Constitution of the United States and Article I, Section 10 of the Constitution of Texas. *Counsel is not obliged to implement the right of confrontation. That duty is imposed upon the court* by the confrontation clause in the Sixth Amendment and Article I, Section 10.

*Baltierra v. State,* 586 S.W.2d at 559 n. 11 (emphasis added).

The Attorney General of Texas has written:

[A]rticle 38.31 refers to interpretation of proceedings in a manner that a deaf person can understand, including but not limited to sign language.... We conclude that, [when notified that a defendant or witness is deaf], a court does not have any discretion as to whether an interpreter will be appointed, but does have discretion as to whether it will appoint a person to interpret *by the use of sign language or by the use of an alternative method of communication that is more appropriate to a specific deaf person.... [T]he trial judge has the task of insuring the minimum understanding necessary* to the protection of ... constitutional rights [to confront witnesses and to assist in his own defense] *and has the duty to explore alternative methods of communication that are appropriate for each person ... Such alternative methods may,* for instance, *include* the use of sign language, finger spelling, lip reading, written communication, or *stenographers to provide simultaneous transcriptions,* or a combination of these methods, depending on a person's proficiency in the different systems of communication.

Op.Tex.Att'y.Gen. No. JM–113 (1983) (emphasis added).

The Attorney General also found that while a court has discretion in deciding whether to appoint a language interpreter for a non-English speaking defendant, it has *no discretion in deciding whether to appoint an interpreter for the deaf:*

You also ask if it is within the court's discretion to have a hearing based on article 38.31(a) in which the issue is

whether the defendant or witness is a deaf person.... [W]e believe that, under Article 38.31(a), a court does not have any discretion whether to appoint an interpreter when the court is notified by a party that a deaf person will appear as a defendant or a witness in a criminal proceeding.

The Attorney General concluded:

[A] basic reason that the statutes provide for interpreters is the guarantee of the right of confrontation under the Texas and United States Constitutions. Every person accused of crime is entitled to be tried in accordance with law. Strict conformity with the statutes and constitutions is the only safe guide for a court or magistrate in the protection of such a constitutional right. A failure to comply ... may constitute a denial of the constitutional right of confrontation and, unless the right is knowingly and intelligently waived, may result in reversible error.

In *Ferrell v. Estelle*, the court held that the trial court "erred in not exploring alternative means for providing Ferrell with an understanding of the proceedings." It continued:

When Ferrell's attorney presented only the transcript alternative and then failed to take full advantage of the court's willingness to grant frequent recesses, he left in doubt whether he failed in his duty to court and client. Because other alternatives were not explored and because counsel failed to make the most of the choice offered by the court, Ferrell's rights were reduced below the constitutional minimum.

568 F.2d at 1133.

Here, as in *Ferrell*, appellant did not waive the right to confront witnesses, and the court did not explore alternative means for providing appellant the minimum level of understanding that is constitutionally required.

We recognize that no request for further relief was made to the trial judge; that article 38.31 neither specifically authorizes nor requires simultaneous stenographic transcription (the only form of communica-

tion that could have helped appellant); and that the statutorily defined term, "qualified interpreters," does not include stenographers, but only "interpreters" holding certain professional certificates. Nevertheless, it is clear that *Baltierra, Ferrell,* and the Attorney General of Texas have recognized an obligation outside the statute, based on state and federal constitutional law, to fashion a remedy suitable to overcome a particular defendant's disability. Because that did not happen in this case, we sustain point of error one.

The question of an appropriate remedy remains.

If [appellant] does not learn to communicate in any way other than writing, then the state may guarantee his rights in a new trial by providing him with stenographers, or with any device that will display or convey words to him and allow him to understand what the witnesses say and to assist his attorney in the conduct of his defense.

*Ferrell v. Estelle*, 568 F.2d at 1133; *accord* Op.Tex.Att'y.Gen. No. JM–113 (1983).

The judgment is reversed, and the cause is remanded to the district court.