### Nathaniel BRAZELL, a/k/a Nathaniel Brazil, Appellant,

v.

### The STATE of Texas, Appellee.

### No. 3–90–169–CR.

Court of Appeals of Texas, Austin.

April 29, 1992.

Lea C. Noelke, Austin, for appellant.

Darla D. Espinoza, Asst. Dist. Atty., Austin, for appellee.

Before CARROLL, C.J., and SMITH and DAVIS,* JJ.

DAVIS, Justice (Retired).

After finding the appellant guilty of forgery, Tex.Penal Code Ann. § 32.21 (1989), the jury assessed punishment, enhanced by prior felony convictions, at sixty years.

Appellant asserts three points of error. In his first point of error, appellant contends the trial court erred in depriving him of his right under the United States Constitution and the Texas Constitution to confront witnesses and participate fully in his defense at trial. The failure of the court to affirmatively establish that "appellant's enhancement plea of true was voluntarily and intelligently made" forms the basis of his second point of error. In his third point of error, appellant asserts that the court erred in failing to admonish him of the consequences of his plea of true to the enhancement allegations in the indictment. We overrule appellant's points of error and affirm the judgment of the trial court.

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

Tex.Gov't Code Ann. § 74.003(b) (1988).

■ In his first point of error, appellant contends that the trial court erred in depriving him of his right under the Sixth Amendment of the United States Constitution and Article I, § 10 of the Texas Constitution to confront witnesses and participate fully in his defense. The basis of appellant's contention is that his deafness prevented him from understanding the proceedings.

After it was brought to the court's attention that a hearing aid was not effective in enabling appellant to hear, and that he did not know sign language and was unable to read lips, the court ordered the defense table moved closer to the court reporter in order that the appellant might read the proceedings on the court reporter's monitor. The record reflects that the court reporter's shorthand is instantly transmitted into the English language on the monitor. After the table was moved, appellant told the court that he was able to read the monitor. In response to defense counsel's concern that people speak faster than anyone is able to read, the court admonished defense counsel and appellant to advise the court in the event that appellant was unable to read everything.[1]

In *Ferrell v. Estelle,* 568 F.2d 1128, 1132 (5th Cir.1978), the court succinctly addressed the necessity of a defendant understanding the proceedings:

> The Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. Ensuring that the defendant has that minimum understanding is primarily the task of the trial judge.

Tex.Code Crim.Proc.Ann. § 38.31 (Supp. 1992), provides in pertinent part:

> (a) If the court is notified by a party that the defendant is deaf and will be present at an arraignment, hearing, examining trial, or trial, or that a witness is deaf and will be called at a hearing, examining trial, or trial, the court shall appoint a qualified interpreter to interpret the proceedings in any language that the deaf person can understanding, including but not limited to sign language. On the court's motion or the motion of a party, the court may order testimony of a deaf witness and the interpretation of that testimony by the interpreter visually, electronically recorded for use in verification of the transcription of the reporter's notes.

In *Adams v. State,* 749 S.W.2d 635 (Tex. App.1988, pet. ref'd), the deaf defendant did not know sign language or lip reading with the minimal level of understanding to enable him to understand the proceedings. Direct examination of the defendant was accomplished by furnishing the defendant with written questions. The only other occasions when the defendant was furnished with written explanations of what was happening occurred when a jury was waived and a copy of the complainant's testimony was furnished him at its conclusion. The court noted that article 38.21 requires that a court appoint an interpreter for a deaf person who understands sign language, but leaves to the court's discretion whether alternative methods will be utilized such as simultaneous transcription, "the only form of communication that could have helped [the defendant]." *Id.* at 639. The court concluded that trial courts have an "obligation outside the statute based on state and federal constitutional law, to fashion a remedy suitable to overcome a particular defendant's disability." *Id.* In *Adams,* only a small portion of the proceeding was reduced to writing for the defendant. In the instant cause, following defense counsel's advising the court of appellant's problem, the remainder of the proceedings were translated on the monitor.

Appellant's testimony consumes almost sixteen pages of the record. Appellant's answers were responsive to questions asked except when he had difficulty understanding a question on cross-examination relative to the county of origin of one of his numerous prior convictions. The question was pursued until such time as appellant

---

1. The court advised the jury of appellant's hearing problem and explained the procedure being utilized for appellant's benefit.

was able to understand and give a responsive answer. On another occasion appellant had a difficult time understanding that one of the prior convictions alleged for enhancement of punishment was waived. Again, the matter was explored until appellant was able to understand what had occurred and appellant entered a plea of true to the remaining convictions alleged for enhancement. Appellant directs our attention to his unresponsive answer, "30 over 20" (apparently referring to his eyesight), on one of the occasions when the court advised him to let it be known if he was unable to keep up with the monitor. We believe it would be a rare trial when a participant who is subjected to numerous questions does not give at least one or more unresponsive answers.

We are unable to consider appellant's suggestion, unsupported by the record, that appellant was reluctant to be placed in the embarrassing position of admitting his limited ability to read. We conclude that the trial court met both constitutional and statutory requirements in providing appellant with a viable remedy to overcome his hearing disability. Appellant's first point of error is overruled.

■ Appellant's points of error two and three are closely interrelated and will be considered together. The alleged failure of the court to establish that his plea of true to the enhancement allegations was voluntarily and intelligently made forms the basis of appellant's second point of error while his third point of error is directed to the failure of the court to admonish appellant of the consequences of his plea of true.

At the punishment stage of the trial, allegations in the indictment charging appellant with prior convictions of aggravated robbery, burglary of a building, aggravated assault, theft and unauthorized use of a motor vehicle were read and appellant was asked whether he wished to plead true or not true. Appellant replied that he would not plead true to the aggravated robbery allegation and the prosecutor announced that the State would waive the aggravated robbery paragraph. It appears that appellant had some difficulty in understanding that he was no longer being charged with having been convicted of this offense and continued to state that he had not been convicted of aggravated robbery. After the court and defense counsel explained to appellant that he was no longer being accused of having been convicted of aggravated robbery, the court read the remaining allegations of prior convictions, asking appellant after the reading of each alleged prior conviction how he wished to plead, and appellant responded "That's true" or "true."

Appellant relies on *Williams v. State*, 770 S.W.2d 81 (Tex.App.1989, no pet.), and decisions from other jurisdictions to support his contention that the court erred in failing to admonish him as to the consequences of his plea of true to the enhancement allegations. In *Williams*, the court found that the trial court incorrectly admonished the defendant of the consequences of his pleas of guilty to the primary offenses, as well as erroneously advising appellant as to the punishment he would receive if he entered a plea of true to the enhancement allegations. Unlike *Williams*, the appellant in the instant cause entered a plea of not guilty to the primary offense and the court did not admonish appellant as to the punishment he would receive upon entering a plea of true.

■ The Court of Criminal Appeals has consistently held that it is unnecessary to admonish a defendant as to the consequences of his plea of true to convictions alleged for enhancement in an indictment. *See, e.g., Harvey v. State*, 611 S.W.2d 108, 112 (Tex.Crim.App.1981) *cert. denied*, 454 U.S. 840, 102 S.Ct. 149, 70 L.Ed.2d 123 (1981); *Crowder v. State*, 424 S.W.2d 637, 638 (Tex.Crim.App.1968). In *Harvey*, the court stated, "[A]s a matter of law, it is unnecessary to admonish an accused who pleads 'true' or 'guilty' to enhancement convictions alleged in the indictment." We decline to deviate from the procedure which has been approved by the Court of Criminal

Appeals for many years in favor of a rule adopted by other jurisdictions. We reject appellant's contentions that his plea of true was not voluntarily and intelligently made and that the court erred in failing to admonish him of the consequences of his plea of true. Appellant's second and third points of error are overruled.

The judgment is affirmed.