**Bobby Gene LINCOLN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–98–00269–CR.**

*Court of Appeals of Texas,
Austin.*

April 1, 1999.

---

T. Layne Peterson, Peterson & Peterson Associates, P.C., Georgetown, for Appellant.

Ken Anderson, Dist. Atty., John M. Bradley, Asst. Dist. Atty., Gerogetown, for State.

Before Chief Justice ABOUSSIE, Justices KIDD and POWERS.*

MARILYN ABOUSSIE, Chief Justice.

A jury found appellant Bobby Gene Lincoln guilty of possessing more than four grams of amphetamine, a controlled substance. Tex. Health & Safety Code Ann. § 481.116(a), (d) (West Supp.1999). The jury assessed punishment, enhanced by two previous felony convictions, at imprisonment for seventy-seven years.

Appellant contends the district court did not make proper accommodations for his hearing impairment and thereby deprived him of his constitutional right to confront the witnesses against him. U.S. Const. amend. VI; Tex. Const. art. I, § 10. He also urges that the court's failure to act violated his statutory right to an interpreter. Tex.Code Crim. Proc. Ann. art. 38.31 (West Supp.1999). We will overrule these points of error and affirm.

Appellant's hearing impairment was first mentioned during arraignment, when defense counsel told the court that appellant "can't hear very well." The court addressed several questions to appellant, which he answered. Appellant told the court that he experiences "[a] lot of ringing, sometimes. Sinuses." He added, "[I]t comes and goes; sometimes, is all that noise in there." Appellant told the court he does not understand sign language. The court instructed the prosecutor to speak up when reading the indictment, and arraignment was completed without further indication that appellant did not hear or understand the proceedings.

Jury selection took place without any sign that appellant could not hear. When asked to stand by the court, appellant did so.

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

A hearing on appellant's motion to suppress evidence was conducted outside the jury's presence before testimony began. The arresting officer testified to his conversations with appellant and explained how appellant gave consent to search his truck. Appellant also testified at the hearing, responding to questions by his attorney and the prosecutor. Only once did appellant ask that a question be repeated. Appellant did not testify that he had been unable to hear or understand the arresting officer.

During trial, defense counsel interrupted the questioning of the State's first witness and asked the prosecutor to speak louder. Counsel explained, "My client is hard of hearing and he's having a hard time following. If we could speak up a little bit, I would appreciate it." Later, during the testimony of the State's second witness, counsel for both parties conferred with the court at the bench. At the conclusion of the conference, which dealt with other matters, defense counsel said, "We're having some communication problems with talking because he is so hard of hearing so he's not hearing everything and so we're trying to communicate. . . ." After the State rested, and outside the jury's presence, defense counsel called appellant to explain his decision not to testify. In response to questions by counsel, appellant testified that he had discussed with counsel whether he should testify and concluded that it was in his best interest not to do so.

Before the jury was returned to the courtroom to begin the punishment phase of trial, the court asked appellant to approach the bench. Appellant apparently did not respond immediately, because defense counsel told the court, "He is just not hearing." During the ensuing conference, the court explained to appellant the consequences of his decision to plead true to the enhancement paragraphs. Appellant told the court he understood. After appellant returned to his seat, there was further discussion regarding appellant's agreement to stipulate to certain facts. The court asked appellant if he could hear. Appellant answered, "Yeah."

As the prosecutor read the enhancement paragraphs to the jury, defense counsel interrupted to say that appellant could not hear her. The prosecutor started again and appellant entered his plea. During the State's closing argument, defense counsel told the court that appellant could not hear and asked "either we be able to sit over there so he can hear a little bit better, or ask that Ms. McCown speak up." The court agreed, but the record does not reflect whether appellant moved or the prosecutor spoke louder.

Before the court formally pronounced sentence, defense counsel told the court, "Judge, my client . . . has asked me to make sure that the record is clear that he has not been able to hear during the trial, and I guess, based on that fact, it's incumbent upon me to ask for a mistrial because he hasn't been able to hear and, therefore, actively take part. . . ." Asked by counsel to explain his hearing problem, appellant told the court, "Besides when I'm up there and I talk to you and you said a few things, I heard a few things she said, and she's repeated some things and wrote some things down, but besides that, basically, I've been going through this trial, I've been convicted, talked about, sentenced and everything, and I ain't heard what half of it's been about." Appellant added, "It just comes and goes. It's like a ringing in a seashell." The court overruled the motion for mistrial with these remarks:

> The Court, for the record, wants to state that during the course of the trial, when the Defendant indicated that he could not hear, the Court took steps to assist him such as allowing him to move about the courtroom on one instance so that he could be placed in position where he would be closer to hear the District Attorney. The Court also had the bailiff move microphones to counsel table, both for the Defense and the State, so that

their voices would be amplified. The Court earlier, during the course of the trial, indicated that if the jury were unable to hear, all they had to do was raise their hand and we would make sure that they would be able to hear and, in fact, they did occasionally make that request. At no time during the course of the trial did we receive a request from the Defendant for any sort of device. The Court did inquire of the Defendant whether he understood sign language at the beginning of the trial. He indicated he did not. Those are matters which I wanted to have on the record.

 "The Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. Ensuring that the defendant has that minimum understanding is primarily the task of the trial judge." *Ferrell v. Estelle*, 568 F.2d 1128, 1132 (5th Cir.1978). Article 38.31(a) requires the appointment of a qualified interpreter upon notification that the defendant is deaf. If a hearing impaired defendant is unable to understand sign language, the court has an obligation to fashion a remedy suitable to overcome the defendant's disability. *Adams v. State*, 749 S.W.2d 635, 639 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). A defendant's failure to object or request relief does not waive his confrontation right if it is otherwise apparent that he cannot hear or understand the proceedings. *Id.* at 637–39.

Appellant chiefly relies on the opinions in *Ferrell* and *Adams*. In both cases, the defendants were deaf, but did not understand sign language and could not read lips. Other persons could communicate with them only in writing. In *Ferrell*, the trial court refused a defense request for a stenographer, but told defense counsel that he would be permitted as many recesses as he needed to write notes to his client. The Fifth Circuit concluded that because "other alternatives were not explored and because counsel failed to make the most of the choice offered by the court,

Ferrell's rights were reduced below the constitutional minimum." 568 F.2d at 1133. Notes from counsel were also the only means of communication employed in *Adams*. Like its federal counterpart in *Ferrell*, the court of appeals held that the trial court erred by failing to explore alternative means for providing the defendant the minimum level of understanding that is constitutionally required. 749 S.W.2d at 639.

This Court has also addressed the problem presented when a defendant is unable to hear, read lips, or understand sign language. *See Brazell v. State*, 828 S.W.2d 580 (Tex.App.—Austin 1992, pet. ref'd). At Brazell's trial, the court ordered the defense table moved so that the deaf defendant could see the court reporter's monitor and read the simultaneous translation of the reporter's shorthand. The defendant, who confirmed for the record his ability to read the monitor, was admonished to inform the court if he was unable to keep up with the proceedings. The defendant was also able to testify with little difficulty. This Court concluded that the trial court provided Brazell a constitutionally and statutorily adequate remedy for his hearing disability. *Id.* at 582.

 In *Ferrell* and *Adams*, it was obvious from the record that the district court failed to take adequate steps to remedy the defendants' inability to hear. The same cannot be said in the present cause. Unlike Ferrell and Adams, appellant is not deaf. Instead, by his own description, he suffers from a ringing in the ears that "comes and goes." The ringing, when it happens, makes hearing others difficult. On a few occasions during the course of his trial, appellant or his counsel indicated to the court that he was having difficulty hearing. On each occasion, appellant was allowed to move or the speakers repeated themselves to permit appellant to hear. Appellant did not indicate at the time that these arrangements were unsatisfactory. More than once, appellant was addressed by the court and responded appropriately,

indicating that he heard and understood what was said. Similarly, appellant twice took the stand and testified without difficulty. It was only after the trial was over that appellant stated to the court that he had been unable to hear much of the time.

Having observed appellant throughout the trial, the district court was in the best position to judge the credibility of appellant's claim that he did not hear the proceedings. While the failure of appellant or his attorney to tell the court earlier that appellant could not hear the proceedings is not a bar to raising the issue on appeal, it is relevant to the question whether the district court knew or should have known that additional remedies were needed. Considering what the district court was told and observed during the trial, we are not persuaded that the court failed to take constitutionally adequate steps to assure that appellant heard and understood the proceedings.

The points of error are overruled and the judgment of conviction is affirmed.