# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00073-CR

---

**Adrian Prouty, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF HAYS COUNTY
### NO. CR-18-0636, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Adrian Prouty appeals his conviction for the third-degree felony offense of failure to comply with sex offender registration requirements. *See* Tex. Code Crim. Proc. art. 62.102(b)(2). In three points of error, appellant contends that the evidence was insufficient to support his conviction, the trial court abused its discretion by failing to provide an interpreter at trial, and he was denied effective assistance of counsel. For the following reasons, we affirm the judgment of conviction.

## Background

The bench trial occurred in January 2019. Appellant stipulated that he was placed on deferred adjudication community supervision for the felony offense of indecency with a child by sexual contact in December 1998 and that "since said disposition [he was] required pursuant to Chapter 62 of the Code of Criminal Procedure to register as a sex offender." *See id.*

art. 62.101(a); *see also id*. art. 62.051(a) (requiring registration or verification of registration with local law enforcement authority in municipality where sex offender resides).

The State's witness was a deputy with the Hays County Sheriff's Office. The deputy testified that registered sex offenders are required to update their registration information and that part of his job duties was to collect this information. He described his office's "Sex Offender Registration Update Information" form that registered sex offenders fill out "anytime they come in for—to verify registration or update registration." The form requires the sex offender to provide "online identifier(s)," which the deputy explained is defined as "any online account that can be used to interact with another person." *See id.* arts. 62.001(12) (defining "Online identifier"), .051(c)(7) (stating that "registration form shall require . . . identification of any online identifier established or used by the person"). The form provides examples of online identifiers: "Facebook, Twitter, Instagram, LinkedIn, Tumblr, Angie's List or any other social media." The exhibits included two of these forms that appellant had filled out and signed on September 14, 2016, and October 3, 2017, respectively. Appellant did not list any online identifiers on either form. The deputy testified that when appellant "came in to verify" in early October, the deputy explained to him what an "online identifier" was, giving the example of Facebook, and appellant responded that he "understood" but did not have an online identifier.

The deputy testified that another part of his duties was to check various online platforms to determine whether sex offenders have registered accounts and that, on October 25, 2017, he found a Facebook profile belonging to appellant. After the deputy found appellant's profile, he contacted appellant by phone and explained to him that Facebook was an example of an online identifier. Appellant responded that he "understood" what an online identifier was but denied that he had one. The deputy then obtained a warrant, and appellant was

arrested. In an interview at the jail, appellant admitted to the deputy that the Facebook account belonged to him. The exhibits included screenshots from appellant's Facebook account and a bodycam recording of the interview between the deputy and appellant.

Appellant testified on his own behalf. He admitted that the Facebook account belonged to him, that he had uploaded his photo to his Facebook account in July 2017, and that he had filled out and signed the Sheriff's Office's form in October 2017. He explained that he was not "computer literate," that he did not have a "clear understanding" of the meaning of "online identifier" when he filled out the form, and that he "forgot" that he had a Facebook account. He explained that he created the Facebook account "whenever [Facebook] came out," used the account to register for college classes, and "stopped completely" using the account after speaking with the deputy. He testified that he had a 3.2 GPA and was studying biological pharmacology and majoring in biology. He also denied that he intentionally deceived the deputy, confirmed that he answered the questions to the "best of [his] ability," and testified that he is "deaf" and has to "read lips." As an example, he testified that he did not hear "the *Miranda* rights[1] being read to [him]" during the interview at the jail in October 2017 because the deputy's lips were covered. He further testified that, at the time of the interview, he "was delusional what [he] was responding to, seems like it," "in jail for three days for not knowing why," and "in a lot of pain at that point."

The trial court found appellant guilty, assessed punishment at confinement for two years and a fine of $1,000, but suspended imposition of the sentence and placed him on community supervision for two years. This appeal followed.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966) (requiring demonstration of use of procedural safeguards to protect privilege against self-incrimination before evidence obtained as result of custodial interrogation may be used against defendant).

**Analysis**

**Sufficiency of the Evidence**

In his first point of error, appellant argues that the evidence was insufficient "to prove [he] voluntarily failed to report an online identifier."

**Standard of Review**

Under the legal sufficiency standard of review, we consider the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). Under this standard, we defer to the trier of fact's resolution of conflicts in testimony, weighing of the evidence, and drawing of reasonable inferences from basic facts to ultimate facts. *Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *see Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015) ("The trier of fact is the exclusive judge of the credibility and weight of the evidence and is permitted to draw any reasonable inference from the evidence so long as it is supported by the record."). "Furthermore, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

**Offense of Failure to Comply with Registration Requirements**

"Texas Code of Criminal Procedure Chapter 62 defines the scope of Texas's sex offender registration program and delineates the legal duties of those who administer it and those subject to its requirements." *Crabtree v. State*, 389 S.W.3d 820, 825 (Tex. Crim. App. 2012).

4

Pursuant to this chapter, a person commits the offense of failure to comply with registration requirements "if the person is required to register and fails to comply with any requirement of [Chapter 62]." Tex. Code Crim. Proc. art. 62.102(a); *see Crabtree*, 389 S.W.3d at 825 (stating elements of offense of failure to comply with registration requirements). This offense is a "circumstances of the conduct" type of offense. *Febus v. State*, 542 S.W.3d 568, 573 (Tex. Crim. App. 2018) (citing *Robinson v. State*, 466 S.W.3d 166, 170–71 (Tex. Crim. App. 2015)). "The 'circumstance' at issue is the duty to register and the culpable mental state of 'knowledge and recklessness' applies only to the duty-to-register element, rather than the failure-to-comply element." *Id.* (citing *Robinson*, 466 S.W.3d at 172).

Appellant does not challenge the sufficiency of the evidence to support a determination that he knew that he had a duty to register. He challenges the sufficiency of the evidence as to the failure-to-comply element based on the defensive theory of involuntariness. *See* Tex. Penal Code § 6.01(a) ("A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession."). Arguing that the evidence was insufficient to prove that he "voluntarily failed to report an online identifier," appellant cites his testimony that he did not understand the term "online identifier" when he filled out the form, that he "forgot" that he had a Facebook account, and that he did not intend to deceive the deputy about his Facebook account.

The Texas Court of Criminal Appeals has explained that the defensive claim that the failure to comply with sex offender registration requirements was due to an "accident" or "mistake" is analyzed under the rubric of an "involuntary act." *Febus*, 542 S.W.3d at 576 & n.33 (citing *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982)); *see id.* at 574 (explaining that "voluntariness" within meaning of section 6.01(a) of Texas Penal Code "refers

5

only to one's physical movements" and that "issue of voluntariness of one's conduct is separate from the issue of one's mental state"); *Farmer v. State*, 411 S.W.3d 901, 905 (Tex. Crim. App. 2013) (comparing defense of "involuntary act" with defense that "focuses on the defendant's state of mind at the time of the incident"). Examples of possible involuntary acts in the context of the offense of failure to comply with registration requirements include "when authorities rebuff attempts to register" or where the failure to register or comply was the result of law enforcement's clerical error. *Febus*, 542 S.W.3d at 573–75; *see Acker v. State*, No. 01-09-01130-CR, 2011 Tex. App. LEXIS 2432, at \*19 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, pet. ref'd) (mem. op., not designated for publication) (explaining that to absolve himself of criminal responsibility based on involuntary act, "the defendant must produce 'evidence of an independent event, such as the conduct of a third party, that could have precipitated the incident'" (quoting *Rhodes v. State*, 997 S.W.2d 692, 694 (Tex. App.—Texarkana 1999, pet. ref'd))).

According to appellant, his failure to disclose his Facebook account was not voluntary but the result of the deputy's "failure to adequate[ly] explain an 'online identifier' to [him] which would include the Facebook account." The trial court, however, reasonably could have believed the deputy's testimony that he explained to appellant what an online identifier was, including specifically providing Facebook as an example, and disbelieved appellant's testimony that he did not understand what an online identifier was and that he forgot about his Facebook account. *See Febus*, 542 S.W.3d at 572, 575 (explaining that factfinder is free to choose which witness to believe and may reject any part of witness's testimony). The deputy testified that he specifically mentioned Facebook as an example of an online identifier to appellant both when appellant "came in to verify" in early October and when the deputy spoke to

6

appellant on the phone later in October and that both times, appellant responded that he understood what an "online identifier" was but denied that he had one. Furthermore, consistent with the deputy's testimony, the one-page form that appellant filled out and signed expressly identifies "Facebook" as an example of an "online identifier." Appellant's testimony also showed that he actively maintained his Facebook account. Appellant admitted that he posted a photo to his Facebook account a few months before he filled out the form in October 2017 and testified that he created the account "whenever [Facebook] came out." Appellant testified that he was pursuing a college degree, used the Facebook account to register for college classes, and posted the photo in July 2017 because the class registration process required him to do so.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that appellant failed to comply with the sex offender registration requirements by failing to report an online identifier and that his failure to comply was voluntary. *See Jackson*, 443 U.S. at 319; *Febus*, 542 S.W.3d at 576 & n.33; *see also Acosta*, 429 S.W.3d at 625 (allowing trier of fact to use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from evidence). We overrule appellant's first point of error.

**Interpreter**

In his second point of error, appellant contends that the trial court abused its discretion by failing to provide an interpreter for him at trial "due to [his] deafness." Appellant concedes that he did not raise this issue with the trial court but argues that the trial court was on notice of his deafness and, therefore, of his need for an interpreter; that an interpreter was

7

constitutionally required to protect his confrontation rights; and that the error was not harmless beyond a reasonable doubt.

Article 38.31(a) of the Texas Code of Criminal Procedure requires a court to "appoint a qualified interpreter to interpret the proceedings in any language that the deaf person can understand" if the court is notified by a party that the defendant is deaf. *See* Tex. Code Crim. Proc. art. 38.31(a). In this context, a "'[d]eaf person' means a person who has a hearing impairment . . . that inhibits the person's comprehension of the proceedings or communication with others." *Id.* art. 38.31(g)(1). "This statute implements the constitutional right of confrontation, which includes the right to have trial proceedings presented in a way that the accused can understand." *Linton v. State*, 275 S.W.3d 493, 501 (Tex. Crim. App. 2009). Once a trial court is on notice that a defendant is deaf, "the trial court is responsible for taking whatever steps are necessary to ensure minimum understanding." *Id.* at 503–04; *see Ex parte Cockrell*, 424 S.W.3d 543, 551 (Tex. Crim. App. 2014) (noting that "whether the trial court should have realized that applicant had a hearing impairment . . . is pertinent when the complaint relates to whether the trial court committed error by failing to appoint an interpreter"); *Lincoln v. State*, 999 S.W.2d 806, 809 (Tex. App.—Austin 1999, no pet.) (explaining that defendant's failure to object or request relief does not waive his confrontation right "if it is otherwise apparent that he cannot hear or understand the proceedings").

Appellant testified that he was "deaf" and that he "can't hear properly." Specifically, he explained that he has "partial hearing loss in one ear and complete hearing loss" in the other ear and has to "read lips." Throughout the course of the trial court proceedings, however, appellant responded appropriately to questions, including providing contextual responses during his testimony that evinced his understanding of the questions that he was being

8

asked. For example, at the outset of cross-examination, the prosecutor explained to appellant that he would be asking appellant some questions and then instructed him: "If any of them don't make sense or you would like them repeated, just let me know, and I'm happy to do that. Okay?" Appellant responded, "Okay," and then did not ask the prosecutor to repeat any questions. The exhibits also included the video recording of the interview between appellant and the deputy that shows appellant effectively communicating with the deputy and providing contextual responses to the deputy's questions without any indication that he was unable to hear or understand the questions being asked of him.[2]

Because the record reflects that appellant communicated effectively with others and provided contextually appropriate responses to questions throughout the trial court proceedings, it does not support appellant's position that the trial court should have been aware that appellant required an interpreter "due to [appellant's] deafness." *See* Tex. Code Crim. Proc. art. 38.31(g)(1); *Linton*, 275 S.W.3d at 503–04; *Lincoln*, 999 S.W.2d at 809. Thus, we conclude that the trial court did not err by not appointing an interpreter sua sponte for appellant. We overrule appellant's second point of error.

**Ineffective Assistance of Counsel**

In his third point of error, appellant contends that he was denied effective assistance of counsel because his counsel failed to: (i) object to the absence of an interpreter,

_____

[2] The trial court made the following comment about appellant's claimed communication issues during his interview with the deputy:

> And quite frankly, Mr. Prouty, I believe that the video does not support what you're telling us about the communication issues that you were having at the time and your state of mind at the time as well.

9

(ii) object to the admissibility of appellant's statements to the deputy in the recorded interview, or (iii) "present argument at the punishment stage before the court assessed punishment."

**Standard of Review**

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 686. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance

claim. *Nava*, 415 S.W.3d at 308. If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392.

**Failure to Object**

Appellant's first two complaints about his attorney's performance are premised on appellant's testimony that he is deaf. He argues that his attorney should have objected to the absence of an interpreter at trial and to the admissibility of appellant's statements to the deputy in the recorded October 2017 interview based on article 38.22, section 3(d) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.22, § 3(d) (stating that certain statements by accused person who is deaf are inadmissible unless specified warnings are interpreted to deaf person by qualified interpreter).

As detailed above, the record supports that appellant was able to communicate with others and to understand the trial court proceedings. Appellant also did not advise the deputy during the recorded interview that he was unable to understand or hear what the deputy was saying, and the recording shows appellant providing contextually responsive answers to the deputy's questions. In this context, defense counsel could have decided that appellant did not require an interpreter to understand and communicate and that requesting an interpreter for appellant during the trial court proceedings or objecting to appellant's statements in the recorded interview would have been futile or useless. *See Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) ("[A] reasonably competent counsel need not perform a useless or futile act."); *Holland v. State*, 761 S.W.2d 307, 319 (Tex. Crim. App. 1988) ("[T]rial counsel was under no

11

obligation to do what would amount to a futile act."); *Pryce v. State*, No. 03-12-00797-CV, 2014 Tex. App. LEXIS 13725, at *9 (Tex. App.—Austin Dec. 23, 2014, no pet.) (mem. op., not designated for publication) (same); *see also Dorsey v. State*, No. 01-14-00685-CR, 2015 Tex. App. LEXIS 7959, at *16 (Tex. App.—Houston [1st Dist.] July 30, 2015, no pet.) (mem. op., not designated for publication) (explaining that, to succeed on ineffective assistance claim based on defense counsel's failure to object, appellant must demonstrative that if trial counsel had objected, trial court would have erred in overruling objection).

Because appellant's trial counsel reasonably could have believed that appellant did not require an interpreter to understand the trial court proceedings and to communicate with others, we cannot conclude that counsel's challenged conduct constituted deficient performance.

### Failure to Present Argument

Appellant also argues that he was denied effective assistance of counsel because his trial counsel did not present argument at the punishment stage. Both sides presented closing arguments during the trial's guilt-innocence phase but did not present further arguments before the trial court assessed punishment.

The record is silent as to trial counsel's strategy or reasoning for why he did not present further argument on punishment. Absent record evidence regarding counsel's strategy or reasoning, we will presume he exercised reasonable professional judgment. *See Hill v. State*, 303 S.W.3d 863, 879 (Tex. App.—Fort Worth 2009, pet. ref'd) (explaining that appellate courts do not speculate about trial counsel's strategy and will assume strategic motivation if one can be imagined "[i]n the absence of direct evidence in the record of counsel's reasons for the challenged conduct"); *Poole v. State*, 974 S.W.2d 892, 902 (Tex. App.—Austin 1998, pet. ref'd)

12

(presuming that errors complained of are supported by trial strategy "unless they cannot be attributed to any reasonable trial plan"); *see also Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

We further observe that counsel's decision not to present further argument on punishment appears to have been a reasonable and successful trial strategy. *See Allen v. State*, No. 14-08-00134-CR, 2009 Tex. App. LEXIS 2900, at \*11 (Tex. App.—Houston [14th Dist.] Apr. 28, 2009, pet. ref'd) (mem. op., not designated for publication) (explaining that "defense counsel's decision to waive final argument is generally considered a matter of trial strategy that will not support a finding of deficient performance"); *Salinas v. State*, 773 S.W.2d 779, 783 (Tex. App.—San Antonio 1989, pet. ref'd) (explaining "[i]t is the trial strategy of some attorneys to waive final argument in an attempt to cut off the State's rebuttal").

The bench trial was brief with only two witnesses, a few exhibits, and appellant's stipulation of certain facts. In his questioning of appellant, trial counsel also elicited evidence that supported mitigating the sentence. Appellant admitted that the Facebook account belonged to him and testified that he did not intend to deceive the deputy but that he did not have a "clear understanding" of what an online identifier was. In his closing arguments during the guilt-innocence phase, trial counsel highlighted appellant's testimony and the lack of evidence that appellant was using the account for "some nefarious intent that he was trying to contact anybody."

Without further argument on punishment, the trial court assessed a moderate fine of $1,000 and confinement of two years, which was the minimum prison sentence for a third-degree felony. *See* Tex. Penal Code § 12.34 (stating punishment range for third-degree felony and authorizing fine of up to $10,000). The trial court also suspended imposition of the sentence

13

and placed appellant on community supervision. Because trial counsel's decision not to present further argument on punishment appears to have been a reasonable and successful strategy, we conclude that it did not constitute deficient performance.

Because we have concluded that appellant has failed to demonstrate deficient performance, we overrule his third point of error and do not consider the second prong of the *Strickland* test regarding prejudice. *See Lopez*, 343 S.W.3d at 144 (stating that, because appellant failed to meet burden under first prong of *Strickland*, court "need not consider the requirements of the second prong"); *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

## Conclusion

Having overruled appellant's points of error, we affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   December 11, 2020

Do Not Publish

14