In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00029-CR


______________________________




GREGORY CHAVEZ SALAZAR, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Criminal District Court No. 4


Dallas County, Texas


Trial Court No. F01-32378-VK




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Gregory Chavez Salazar pled guilty to aggravated sexual assault and, in three companion
cases, to indecency with a child. His punishment was assessed by the trial court for this offense at
twenty-five years' confinement. Salazar had been charged with four separate counts of sexual
offenses committed against his children. Punishment on the four charges was tried in one
proceeding. The court sentenced Salazar to twenty-five years' confinement for the aggravated sexual
assault (this appeal) and to twenty years' confinement on each of the three charges of indecency with
a child, and ordered that the punishments run concurrently.

 Salazar contends on appeal that the trial court committed reversible error. He contends that,
when it became apparent he could not hear the witnesses because of his hearing impairment, the
court was required to provide him an interpreter or some other means of communication that would
permit him to participate in the proceedings. 

 Salazar testified he could not hear what his daughters (the victims) had been saying during
their testimony, but he believed they had told the truth. Salazar testified he was born without one
eardrum and was partially deaf in the other ear. Salazar then testified briefly that he had "touched"
his daughters and that he had placed his finger inside the vagina of one of the girls. 

 Tex. Code Crim. Proc. Ann. art. 38.31(a) (Vernon Supp. 2002) requires a trial judge to
provide an interpreter for a deaf person. The statute implements the constitutional right of
confrontation, which includes the right to have trial proceedings presented in a way that the accused
can understand. (1)
 Baltierra v. State, 586 S.W.2d 553, 558 (Tex. Crim. App. 1979) (when trial court
learns accused does not speak and understand English, interpreter must be furnished to translate trial
proceedings to accused; otherwise, accused's constitutional right of confrontation is denied); see also
Tex. Const. art. 1, § 10; Tex. Code Crim. Proc. Ann. art. 38.30 (Vernon Supp. 2002). If a
hearing-impaired defendant is unable to understand sign language, the court has an obligation to
fashion a remedy suitable to overcome the defendant's disability. Lincoln v. State, 999 S.W.2d 806,
809 (Tex. App.-Austin 1999, no pet.); Adams v. State, 749 S.W.2d 635, 639 (Tex. App.-Houston
[1st Dist.] 1988, pet. ref'd). A defendant's failure to object or request relief does not waive his
confrontation right if it is otherwise apparent he cannot hear or understand the proceedings. Adams,
749 S.W.2d at 637-39.

 Counsel failed to request an interpreter or to object to the lack of an interpreter. As set out
above, counsel's failure does not waive the right, since it became apparent Salazar could not hear at
least part of the proceeding. However, this case differs from Adams, because in that case the
defendant was entirely deaf and could communicate only in writing. Salazar's situation is more like
the one addressed by the Austin court in Lincoln. In that case, the defendant made it known during
the testimony that he was having difficulty hearing, and the court allowed him to move or directed
the speaker to repeat himself so the defendant could hear. In Lincoln, the defendant did not indicate
at the time that these arrangements were unsatisfactory. The Austin court acknowledged that the
contention was not waived by Lincoln's failure to complain that he could not hear, but recognized
that the trial court could not attempt to correct anything of which it was not aware. The court then
concluded that the action or inaction of the trial judge did not violate the constitutional rights of the
defendant.

 In this case, many times Salazar was addressed by the court or by counsel and responded
appropriately, indicating that he heard and understood what was said. As in Lincoln, the trial court
was in the best position to judge the credibility of the appellant's claim that he did not hear part of
the proceedings. In this case, Salazar did not tell the court he could not hear the victims' testimony
until after they had finished testifying. Until then the trial judge had every reason to believe Salazar
was able to understand the proceedings and testimony, and no reason to the contrary. Therefore, 
the court could not be expected to take action to ensure that the testimony's content was effectively
communicated to Salazar. Considering what the trial court was told and observed during the trial,
we are not persuaded the court failed to take constitutionally adequate steps to ensure Salazar heard
and understood the proceedings.

 Further, this does involve a guilty plea. The brief testimony of the victims was not explicit
in any respect and was, in substance, the same as the testimony provided by Salazar. In some
respects, Salazar's testimony admitting his actions was more detailed than that provided by the
victims. Even if we concluded the court erred by failing to take additional steps to ensure that
Salazar was made fully aware of the testimony of the victims, we are convinced beyond a reasonable
doubt that the error did not in this instance contribute to the punishment assessed against Salazar. 
Tex. R. App. P. 44.2(a).

 We affirm the judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 3, 2002

Date Decided: September 4, 2002


Publish
1. The Texas Constitution requires that a defendant sufficiently understand the proceedings
against him to be able to assist in his own defense. Ensuring that the defendant has that minimum
understanding is primarily the task of the trial judge. Lincoln v. State, 999 S.W.2d 806, 809 (Tex.
App.-Austin 1999, no pet.); see also Tex. Const. art. 1, § 10. 





st
Accounts' for the John Deweese [sic] uncommitted interest to Plaintiff Edmund R. Wood
pursuant to the unrecorded Operating Agreement." The trial court also awarded pre- and
post-judgment interest, and attorneys' fees.

 The parties stipulated that the proceeds attributable to the Dewese uncommitted
interest totalled $171,695.03 for the period 1957 through July 1988, and $45,832.55 for the
period August 1988 through January 2001. (5) A pre- and post-judgment interest rate of ten
percent was agreed to by the parties. The parties also stipulated Wood's reasonable
attorney's fees at trial were $35,000.00 and for each level of unsuccessful appeal by
Amoco, Exxon Mobil, and Faulconer are $10,000.00. (6)

 Amoco and Exxon Mobil contend the trial court erred by denying their motions for
summary judgment and by granting Wood's motion for summary judgment. The key issue
in resolving the dispute between the parties is whether Wood is entitled to claim the
balance of the Dewese interest CIA.

 Summary judgment is proper when the movant establishes that there are no
genuine issues of material fact and that the movant is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979); Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377, 379 (Tex.
App.-Texarkana 1989, no writ). The question on appeal is not whether the summary
judgment proof raises a fact issue with reference to the essential elements of the plaintiff's
cause of action, but whether the summary judgment proof establishes that the movant is
entitled to summary judgment as a matter of law. Gonzalez v. Mission Am. Ins. Co., 795
S.W.2d 734, 736 (Tex. 1990). Because the movant bears the burden of proof, all evidence
favorable to the nonmovant is taken as true, and all doubts as to the genuine issue of
material fact are resolved in favor of the nonmovant. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 When both parties move for summary judgment and the trial court grants one and
denies the other, the reviewing court shall review the summary judgment evidence
presented by both sides and determine all questions presented. Comm'rs Court v. Agan,
940 S.W.2d 77, 81 (Tex. 1997).

 Article 64.091 of the Texas Civil Practice and Remedies Code, the statute allowing
a trial court to appoint a receiver for mineral interests, does not authorize the receiver to
convey any rights to personal property. Tex. Civ. Prac. & Rem. Code Ann. § 64.091
(Vernon 1997). Royalties become personal property once the mineral estate is severed
from the real estate at the well head. Humble Oil & Ref. Co. v. West, 508 S.W.2d 812, 817
(Tex. 1974); Rogers v. Ricane Enters., Inc., 930 S.W.2d 157, 165 (Tex. App.-Amarillo
1996, no writ). A party to a mineral development lease is only entitled to mineral royalties
accruing after the date the owner ratified the lease in question by either filing suit or by
fulfilling the terms of the operating agreement. See Montgomery v. Rittersbacher, 424
S.W.2d 210, 214-15 (Tex. 1968) (mineral owner not entitled to preratification royalties).

 Further, the receiver's lease in this case purports to be retroactive to March 1, 1955,
the date of first production. Nevertheless, the earliest date Wood could have ratified the
mineral development lease and contributed the Dewese interest was August 17, 1999, the
filing date of the first lease Wood obtained from the receiver. Accordingly, the statutes and
caselaw do not authorize recovery under Wood's claim given the facts of this case. The
trial court erred by granting Wood's motion for summary judgment and awarding royalties
in the Dewese CIA back to 1954. Wood was not entitled to retroactive proceeds as a
matter of law.

 In their second point of error, Amoco and Exxon Mobil contend the trial court erred
by denying their motions for summary judgment. 

 The parties assume Amoco and Exxon Mobil continue to maintain a CIA for the
post-production proceeds attributable to the Dewese interest before 1988, even though
both Amoco and Exxon Mobil sold their interests in the Richardson unit almost fifteen years
ago. Wood sued Amoco and Exxon Mobil for royalties attributable to production proceeds
for the Dewese interest CIA from 1955 through 1988. However, Wood did not acquire a
receivership lease until 1999 for the Dewese interest. A receiver's mineral lease may only
convey the rights to proceeds from future production; it may not convey personal property
such as royalties for past production. Cf. Superior Oil Co. v. Roberts, 398 S.W.2d 276, 278
(Tex. 1966) (fact that operator retained more than its proper share in division of mineral
proceeds is matter for royalty owners; it cannot authorize a claim for retroactive ratification
of lease agreement). Since, as a matter of law, Wood has no right to recover royalties
accruing before obtainment of the receiver's lease, and because this is Wood's only theory
of recovery against Amoco or Exxon Mobil, the trial court erred by denying Amoco's and
Exxon Mobil's motions for summary judgment.

 At oral argument, the parties agreed the trial court rendered a final judgment
disposing of all Wood's claims against Amoco and Exxon Mobil. Because we find the trial
court erred by granting Wood's motion for summary judgment and by denying Amoco's and
Exxon Mobil's motions for summary judgment, we reverse the summary judgment granted
in favor of Wood and render judgment that Wood take nothing from Amoco and Exxon
Mobil.


 Donald R. Ross

 Justice




Date Submitted: May 14, 2003

Date Decided: June 24, 2003





OPINION ON REHEARING



 Amoco and Exxon Mobil filed a motion for rehearing contending this Court should
also remand this case for determining whether the trial court should award Amoco and
Exxon Mobil their attorney's fees. A trial court may award costs and reasonable and
necessary attorney's fees in a declaratory judgment action to the extent that the trial court,
in its discretion, determines such an award is equitable and just. Tex. Civ. Prac. & Rem.
Code Ann. § 37.009 (Vernon 1997); Utley v. Marathon Oil Co., 31 S.W.3d 274 (Tex.
App.-Waco 2000, no pet.). Wood opposes any award of attorney's fees on the ground
that Amoco and Exxon Mobil failed to specifically request such relief in their motion for
summary judgment or in their amended motion for partial summary judgment.

 In the trial court, Amoco and Exxon Mobil's third-party defendants' original answer
contained a request for attorney's fees should the companies prevail. Amoco and Exxon
Mobil's answer to Wood's amended original petition for declaratory judgment also
contained a counterclaim against Wood for attorney's fees. The companies' motion for
summary judgment, however, did not specifically request an award of attorney's fees in
conjunction with an award of summary judgment. Nor did the companies' amended motion
for partial summary judgment specifically request the award of attorney's fees. 

 The trial court's notice of the hearing on the motions for summary judgment did not
include the notice that it would consider the issue of attorney's fees. The record before us
suggests that, when the trial court considered the parties' competing motions for summary
judgment, the court had before it no evidence regarding the attorney's fees from either
side. What constitutes reasonable attorney's fees is a question of fact. Merch. Ctr., Inc.
v. WNS, Inc., 85 S.W.3d 389, 397 (Tex. App.-Texarkana 2002, no pet.). Thus, even
assuming the trial court had properly awarded summary judgment in favor of Amoco and
Exxon Mobil, the court was not in a position, at that juncture of the proceedings, to award
attorney's fees, if any, that it found to be "equitable and just." An additional hearing,
complete with advance notice and the receipt of evidence, would have been required as
a matter of course.

 Given the procedural posture of the trial court at the time it considered the
competing motions for summary judgment, and understanding that we have rendered
judgment in favor of Amoco and Exxon Mobil, we grant Amoco and Exxon Mobil's motion
for rehearing and remand this case to the trial court for the sole purpose of resolving
Amoco and Exxon Mobil's claim for attorney's fees.


 Donald R. Ross

 Justice


Date: August 7, 2003


1. Edmund Key, III, P. W. and Constance Key Wood, R. O. and Rae Key Dulaney,
John P. and Nancy Key Burton, William B., Jr., and Mary Key Henley, Mrs. Rae Key (a
widow), Dolly Bell Key ("a feme sole"), Constance Key Wandel ("a feme sole"), C. M., Jr.,
and Mary Wandel Thompson, and John Philip Wandel. 
2. Stanolind was created in 1931 as the exploration and production business of
Amoco. Stanolind was eventually dissolved during corporate restructuring.
3. Edmund R. Wood is the son of Constance Key Wood, one of the original Key family
members who contributed her mineral rights to create the Richardson Unit. Wood inherited
his mother's mineral estate on her death in 1983. At the time of his inheritance, Amoco
and Exxon Mobil were no longer operating the Richardson unit. 
4. The propriety of the nunc pro tunc order is not at issue before us in this appeal.
5. Without waiving their rights to contest liability on appeal, Amoco, Exxon Mobil, and
Faulconer each stipulated their obligations for damages would be $85,847.52, $85,847.51,
and $45,832.55, respectively.
6. Pending appeal but before submission of the case, Faulconer settled its appeal
against Wood. We severed Faulconer's appeal against Wood, assigned it cause number
06-03-00080-CV, and remanded the case for entry of orders to effectuate the settlement
agreement. Vern E. Faulconer, Inc. v. Wood, No. 06-03-00080-CV (Tex. App.-Texarkana
June 10, 2003) (memorandum opinion).