

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-15-00220-CR

DONALD BRUCE WERNER                                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1357744D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Donald Bruce Werner appeals his convictions for five counts of aggravated sexual assault and two counts of indecency with a child.[2] In one issue, he contends that the trial court violated his constitutional rights of due

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. § 21.11(a)(1) (West 2011), § 22.021(a)(1)(B), (2)(B) (West Supp. 2015).

process, due course of law, and confrontation by failing to provide an interpreter for him at trial because he is hearing impaired. We affirm.

**Background Facts**

The undisputed evidence shows, and appellant concedes, that he engaged in various sexual acts with his granddaughter, N.H. (Natalie),[3] over the course of several years while she was under fourteen years old.[4] Natalie eventually disclosed this abuse to her mother. She also discussed the abuse with an interviewer at an advocacy center and with a clinical social worker.

A grand jury indicted appellant with twelve counts of either aggravated sexual assault or indecency with a child. At trial, the State proceeded with five counts of aggravated sexual assault and two counts of indecency with a child. Appellant chose the trial court to assess his punishment in the event of his conviction, and with the assistance of appointed counsel, he pled not guilty.

At trial, appellant did not cross-examine any of the State's witnesses. The trial court admitted a recording of appellant's interview with a police officer, in which appellant admitted that he had watched pornography with Natalie and that he had engaged in sexual contact with her on several occasions and in various

---

[3]To protect the victim's identity, we use a pseudonym. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[4]By way of example, Natalie testified that appellant had put his penis in her mouth "about 50 times." Natalie also testified that appellant had touched her breasts, that she had touched his penis with her hands, and that they had watched pornography together.

2

ways. During appellant's testimony in front of the jury, he again admitted to several instances of sexual abuse with Natalie. He claimed that both of them deserved blame for the abuse.

When the parties concluded their presentation of evidence and arguments, the jury deliberated for eleven minutes and convicted appellant of five counts of aggravated sexual assault and two counts of indecency with a child. After concluding the punishment phase of the trial, the trial court sentenced appellant to confinement for life for each of the aggravated sexual assault convictions and to confinement for twenty years for each of the indecency with a child convictions. The court ordered all of the sentences to run concurrently.

Through new counsel, appellant filed a motion for new trial in which he contended,

> The trial court committed a material error likely to injure [his] rights by failing to appoint an interpreter pursuant to [article 38.21 of the code of criminal procedure]. That failure denied [him] the rights guaranteed him by the United States and Texas Constitutions, including but not limited to the right to due process, the right to due course of law, the right to confront witnesses against him, [and] the right to a fair trial . . . .

The trial court did not expressly rule on the motion for new trial, so it was overruled by operation of law.[5] Appellant brought this appeal.

---

[5] *See* Tex. R. App. P. 21.8(c).

## The Alleged Need for an Interpreter

Appellant contends only that the trial court abused its discretion by failing to provide an interpreter for him at trial. He contends that he is legally deaf and that the lack of an interpreter deprived him of the constitutional rights of due process, due course of law, and confrontation.[6]

At various points before and during the trial, appellant expressed difficulty in hearing questions and instructions presented to him. For example, during a pretrial hearing, the following colloquy occurred:

> THE COURT: All right, Mr. Werner, you are -- I'm going to call your case. All right? It is --
>
> THE DEFENDANT: What?
>
> THE COURT: Your case. The indictment is -- come up a little closer to me.
>
> The indictment is 1357744D wherein Donald Bruce Werner is charged with aggravated sexual assault of a child. Do you understand? [You've] got to answer.
>
> THE DEFENDANT: (Shakes head up and down).
>
> THE COURT: And verbally answer. Don't shake your head. Tell me if you understand what I'm saying.
>
> THE DEFENDANT: What? What did he say?
>
> THE BAILIFF: Answer the Judge yes or no. Answer.
>
> THE DEFENDANT: What did he say?

---

[6]Appellant does not discuss these constitutional rights separately. We will examine them together.

4

[DEFENSE COUNSEL]: He says you're charged with aggravated sexual assault of a child.

THE DEFENDANT: Yeah.

During the majority of the trial, including during all of the voir dire stage, appellant did not express any difficulty in hearing. He also conversed well with a police officer in an interview that he gave after his arrest although he asked for clarification after certain questions. And on many occasions at trial, appellant followed and responded to statements by witnesses, his counsel, and the trial court. As an example, during the same pretrial hearing, the following exchange occurred:

> [DEFENSE COUNSEL]: . . . Mr. Werner doesn't believe that it's aggravated sexual assault because in his opinion the child cooperated and since she cooperated, it's not aggravated.
>
> THE COURT: Oh. Even though she was a child younger than 14 years of age?
>
> [DEFENSE COUNSEL]: Yes, sir, he understands that. . . . [W]e have explained that to him and he doesn't believe it's aggravated because she cooperated.
>
> THE COURT: Okay.
>
> THE DEFENDANT: I didn't do that. I didn't aggravate anything and I didn't assault anything.
>
> THE COURT: Okay.
>
> THE DEFENDANT: And I don't want to plead guilty to that.
>
> THE COURT: All right.
>
> THE DEFENDANT: I'm innocent of that . . . .

5

During the same pretrial hearing, appellant's counsel expressed that he did not know what to do about appellant's difficulty in hearing. Appellant told the trial court that he did not have hearing aids but that he needed them. He said, "This is terrible living like this without being able to understand anybody." The trial court asked appellant if he could hear sound that was amplified with a microphone, and appellant said, "Probably. I think the best way I can explain it to you is I can't hear the highs in a person's voice . . . . All I hear is this (covered mouth with hand)."

During the trial, while Natalie was testifying, the following exchange occurred:

> [DEFENSE COUNSEL]: I'm sorry, Your Honor, may we approach the bench?
>
> THE COURT: Yes.
>
> (At the bench, on the record)
>
> [DEFENSE COUNSEL]: Judge, he's saying he can't hear anything that she's saying. But I don't know what the solution to that problem would be.
>
> THE COURT: Yeah, I don't either.
>
> [DEFENSE COUNSEL]: Y'all got any suggestions? I don't.
>
> THE COURT: She's talking into the microphone. The only thing I can suggest, you get close enough to him and tell him what's going on.
>
> [DEFENSE COUNSEL]: Can we turn it up any? This is as high as we're getting?

Later in Natalie's testimony, the parties again discussed whether appellant could hear her, and this exchange occurred:

[DEFENSE COUNSEL]: Your Honor, may we approach the bench again? I'm sorry.

THE COURT: Come on up.

. . . .

[DEFENSE COUNSEL]: Mr. Werner is not deaf. Therefore he does not need a deaf interpreter. I just want to ensure that he's able to understand what's going on . . . .

THE COURT: Okay.

[DEFENSE COUNSEL]: I mean, I'm writing everything down. Obviously I can't jot every single word down. But, I mean, as far as I guess her -- the part that we're jotting down, whether he understands it or not. I mean, I think he may because he --

*THE COURT: Well, he's answering, because I could hear him saying she's not telling the truth. So he's understanding something.*[7]

. . . .

*[DEFENSE COUNSEL]: Would you put on the record that you've been watching the entire time? He understands what is going --*

*THE COURT: That's what I just said.*

[DEFENSE COUNSEL]: Okay.

*THE COURT: I've watched him. He's answering. He's denying everything. So I think he understands it.*

---

[7]During Natalie's testimony, while she was crying, appellant stated that she was "[m]aking up . . . lies." Later during her testimony, the trial court sustained the State's objection to appellant's making unsolicited comments.

*[DEFENSE COUNSEL]:    To you does it appear he understands what's going on?*

*THE COURT:  Yes, it does.*  [Emphasis added.]

Later, after Natalie's testimony concluded, appellant's counsel once again approached the trial court about appellant's hearing impairment.   The following exchange occurred:

[DEFENSE COUNSEL]:   I realize I'm being repetitive about this, Judge.  But during [Natalie's] testimony I was watching Mr. Werner and the way he was acting about the way [co-counsel] was talking to him.  *And it appears to me he understood what was going on.  He made several comments throughout her testimony that indicated to me he understood what she was saying.*

THE COURT:   And likewise I was watching him and he was making comments.  He was denying certain things.  *So it's my understanding that he's hearing and understanding the testimony as it goes.*

[DEFENSE COUNSEL]:   And if from -- I'm going to assume unless anything changes, I'm going to assume he's continuing to hear.  *But if I come to realize that he's not, I'll let you know, Judge.*  [Emphasis added.]

Counsel did not raise the issue of appellant's hearing with the trial court at any point after this exchange.  Appellant testified and responded appropriately to questions, although some questions required repetition.   He stated while testifying that he was legally deaf in one ear and that his other ear was "on its way."

Appellant argues that despite the "red flags" that appear in the record concerning his hearing, "no efforts were undertaken to provide assistance as mandated by article 38.31 [of the code of criminal procedure] as well as federal

8

and state constitutional requirements designed to provide [him] a fair trial."  He contends, "The ongoing record in this cause inescapably demonstrates that [he] suffered from some degree of hearing loss that substantially impaired his ability to hear the testimony of witnesses, to hear the audio recording of his post-arrest interview, and to hear the questions put to him . . . ."

Article 38.31 states that if a defendant is deaf, the court "shall appoint a qualified interpreter to interpret the proceedings in any language that the deaf person can understand, including but not limited to sign language."  Tex. Code Crim. Proc. Ann. art. 38.31(a) (West Supp. 2015).  A person is deaf under article 38.31 when the person "has a hearing impairment . . . that *inhibits the person's comprehension of the proceedings* or communication with others."  *Id.* art. 38.31(g)(1) (emphasis added); *see Ex parte Cockrell*, 424 S.W.3d 543, 546 (Tex. Crim. App. 2014).

Article 38.31 serves the guarantee of due process and implements the constitutional right of confrontation, which includes

> the right to have trial proceedings presented in a way that the accused can understand.  Under [article 38.31] and the relevant constitutional provisions, the trial court has a duty to devise a communication solution that provides the particular defendant with "that minimum level" of understanding that is constitutionally required.

*Linton v. State*, 275 S.W.3d 493, 501 (Tex. Crim. App. 2009) (footnote omitted); *see also* U.S. Const. amends. V (expressing the right of due process), VI (stating

that in all criminal prosecutions, "the accused shall enjoy the right to . . . be confronted with the witnesses against him").

We apply an abuse of discretion standard "in reviewing whether the trial court took adequate steps to ensure that a deaf defendant sufficiently [understood] the proceedings to be able to assist in his own defense." *Linton*, 275 S.W.3d at 502. Thus, we do not reverse the trial court's decision unless it lies outside the zone of reasonable disagreement. *Id.* at 503. In our review, we must consider that the trial judge was "in direct contact with the defendant" and that "evaluating whether a hearing-impaired defendant truly comprehends what is spoken is more art than science." *Id.* at 502–03. The trial judge, "having the defendant in his presence, observing his level of comprehension, and asking him questions, has wide discretion in determining the adequacy of interpretive services." *Id.* at 500.

The ultimate question is whether any inadequacy in the defendant's understanding made the trial fundamentally unfair. *Id.* at 503. The trial is fundamentally unfair when the defendant is unable to assist in his own defense.[8] *Id.* at 504. "100% comprehension is . . . not the constitutional requirement." *Id.* at 508.

---

[8]Like in *Linton*, where the court of criminal appeals held that a trial court did not abuse its discretion by refusing to use a deaf-relay interpreter, in appellant's motion for new trial, he did not "set out . . . any specific instances in which [he] failed to understand crucial testimony during the trial . . . or . . . was not able to communicate adequately with [his] counsel." 275 S.W.3d at 509.

10

Under these standards, we cannot conclude that the trial court abused its discretion or violated appellant's constitutional rights by not appointing an interpreter. Article 38.31(a) and *Linton* instruct us that we measure the trial court's decision on interpretive services by whether the defendant has a basic understanding of the proceedings to support his participation in them. *See* Tex. Code Crim. Proc. Ann. art. 38.31(a); *Linton*, 275 S.W.3d at 500–04; *see also Brazell v. State*, 828 S.W.2d 580, 581 (Tex. App.—Austin 1992, pet. ref'd) (stating that a deaf defendant must have a "minimum understanding" of the proceedings). Here, as demonstrated by the quotes emphasized above, the trial judge and appellant's counsel—both of whom observed appellant closely and directly—agreed that he had such a contemporaneous understanding. Upon the last discussion between appellant's counsel and the trial court about the issue of appellant's hearing, counsel represented that he would thereafter inform the court if he realized that appellant was not understanding the proceedings, but counsel never did so. The cold record does not provide us with reasons to reject the first-hand observations of the trial court and appellant's counsel that affirmed appellant's understanding of the proceedings. *Cf. Salazar v. State*, 93 S.W.3d 339, 341 (Tex. App.—Texarkana 2002, pet. dism'd) ("Considering what the trial court was told and observed during the trial, we are not persuaded the court failed to take constitutionally adequate steps to ensure Salazar heard and understood the proceedings."); *Lincoln v. State*, 999 S.W.2d 806, 810 (Tex. App.—Austin 1999, no pet.) ("Having observed appellant throughout the trial, the

11

district court was in the best position to judge the credibility of appellant's claim that he did not hear the proceedings."). As the State contends, appellant's position in his motion for new trial and on appeal that he needed an interpreter is expressly contrary to the position that his counsel took at trial.

Furthermore, the record shows that appellant appropriately and meaningfully, even if imperfectly, responded to questions and instructions presented to him and to the testimony offered by the State's witnesses. Appellant interjected his opinion about the truthfulness or validity of Natalie's testimony more than once and responded to multiple questions and instructions presented to him by his counsel, the trial court, the State, and the police officer who interviewed him before trial. *Cf. Valdez v. State*, No. 03-12-00098-CR, 2014 WL 4362949, at \*3 (Tex. App.—Austin Aug. 29, 2014, no pet.) (mem op., not designated for publication) ("Given that appellant was able to communicate with others and to respond appropriately to questions and directions from the court during the plea proceeding[,] . . . the trial court could have reasonably concluded that appellant was not a 'deaf person' as that term is defined under article 38.31.").

We note that toward the end of appellant's brief, he contends that the trial court erred by "failing to conduct a hearing as requested on [his] motion for new trial." Appellant does not provide any analysis or citation to authority to support this argument, and the argument, which is not fairly included within appellant's presented issue, is multifarious. Thus, we overrule the argument. *See* Tex. R.

12

App. P. 38.1(f), (i); *Soliz v. State*, 432 S.W.3d 895, 900 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 1154 (2015); *Mays v. State*, 318 S.W.3d 368, 390 n.82 (Tex. Crim. App. 2010), *cert. denied*, 562 U.S. 1274 (2011).

We cannot conclude that the trial court abused its discretion or violated appellant's statutory or constitutional rights when it did not provide an interpreter. *See Linton*, 275 S.W.3d at 501–02. Thus, we overrule appellant's only issue.

## Conclusion

Having overruled appellant's only issue, we affirm the trial court's judgments convicting him of five counts of aggravated sexual assault and two counts of indecency with a child.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 23, 2016